# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 9, 2005      Decided October 28, 2005

No. 04-5065

MICHAEL G. HOROWITZ, PH.D,
APPELLANT/CROSS-APPELLEE

v.

PEACE CORPS,
APPELLEE/CROSS-APPELLANT

---

Consolidated with
04-5087 and 04-5279

---

Appeals from the United States District Court
for the District of Columbia
(No. 00cv00848)

---

*Michael G. Horowitz*, appearing pro se, argued the cause and filed the briefs for appellant/cross-appellee.

*Lisa S. Goldfluss*, Assistant U.S. Attorney, argued the cause for appellee/cross-appellant. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: After choosing to resign from his position as a Peace Corps volunteer and thereby avoid the filing of an Administrative Separation Report (ASR) detailing allegations of sexual misconduct, pro se appellant Dr. Michael Horowitz challenges the district court's order allowing the Peace Corps to withhold the draft ASR from release under Exemption 5 of the Freedom of Information Act (FOIA). Horowitz also appeals the district court's denial of his request for access to the same document under the Privacy Act. Finally, the Peace Corps appeals the denial of its attempt to protect the name of the complainant under FOIA Exemption 6.

We conclude the district court properly exempted the draft document from release under FOIA Exemption 5 and properly found the document was not part of a system of records subject to disclosure under the Privacy Act. However, we conclude FOIA Exemption 6 also applies; therefore, the name of the alleged victim is not subject to release as a segregable fact.

I

From 1998 to 2001, Arturo Giron was Peace Corps Country Director for the Kingdom of Tonga; his duties included supervision of Peace Corps volunteers stationed in Tonga. On March 7, 1999, a female volunteer told Giron a young Tongan man claimed he had been the victim of sexual misconduct involving Michael Horowitz. The young man, a student at 'Atenisi High School, was 18 or 19 years old and appeared to have been under 18 at the time of the incident.

Giron consulted the Peace Corps Manual and contacted the General Counsel's office for advice. He also interviewed the Tongan student, who repeated substantially the same allegations. Giron and Sally Olsonoski, another Peace Corps worker, then met with Horowitz. Horowitz remembered the incident but explained that the encounter was consensual and assured Giron the student had been 18 years old at the time. Olsonoski testified that Horowitz said, "I always card them," but acknowledged that it was difficult to do so in a foreign country. Giron again sought assistance from the General Counsel's office, stating in an e-mail that "[t]here is no clear age of majority [in Tonga], but homosexual acts are illegal under the law here." Giron confessed he was "now completely confused about how to proceed," and requested guidance.

Within a week of receiving the volunteer's report, Giron prepared "a single, cohesive document" that summarized his investigations and notes from various meetings, and generally outlined the events and the actions he had taken. He used the computer template designed for creating ASRs but completed only three of the template's five sections. At that point, according to Giron, "no final decision had been made with respect to the incident and the volunteer involved. We were still in the process of deliberating."

On March 16, 1999, Giron e-mailed the document to senior officials at Peace Corps headquarters, asking them to review the draft and submit changes and comments. Later that day, Horowitz informed Giron that he was resigning from the Peace Corps. Horowitz now claims he resigned only after Giron read parts of the draft ASR to him, told him a final decision to administratively separate him had been made, and informed him that the ASR would be sent to headquarters unless Horowitz resigned. Giron denies ever making a final decision or informing

Horowitz that he had done so. At Horowitz's request, however, Giron kept the draft ASR in his office safe.

On June 18, 1999, Horowitz requested a copy of the draft ASR through FOIA, 5 U.S.C. § 552. The Peace Corps denied his request on August 17, 1999. On November 15, 1999, Horowitz administratively appealed the denial, but the Peace Corps again denied his request on April 19, 2000. Horowitz then filed suit in the United States District Court for the District of Columbia, seeking disclosure of the draft ASR under FOIA and the Privacy Act, 5 U.S.C. § 552a. The Peace Corps contended the draft ASR was a predecisional document exempt from release under FOIA and that releasing the student's name would be a clearly unwarranted invasion of his privacy. The Peace Corps also argued the document was not contained in a system of records and thus was not subject to release under the Privacy Act.

The district court granted partial summary judgment to the Peace Corps, ruling that the document was not subject to release under the Privacy Act, and partial summary judgment to Horowitz, ruling that release of the student's name would not be a clearly unwarranted invasion of privacy under FOIA. After an evidentiary hearing, the district court ruled in favor of the Peace Corps, allowing the document to be withheld as predecisional. However, the court confirmed that the identity of the student was a segregable fact that must be released to Horowitz; release of the name was stayed pending this appeal.

II

We review orders granting summary judgment *de novo*. *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 902 (D.C. Cir. 1996). We will not set aside the district court's findings of fact unless they are clearly erroneous, giving due regard to the district court's opportunity to judge the

credibility of witnesses. Fed. R. Civ. P. 52(a); *see Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1407 (D.C. Cir. 1988).

A

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The statute also provides a list of exemptions from this command. 5 U.S.C. § 552(b). "[T]he burden is on the agency to sustain its action" in claiming these exemptions. 5 U.S.C. § 552(a)(4)(B). Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption privileges "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

The privilege is meant to protect "predecisional communications" from disclosure so as to "prevent injury to the quality of agency decisions." *Id.* at 151. Thus, the exemption "protects materials that are both predecisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). We previously have stated that "the key question in Exemption 5 cases [is] whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987). "Finally, even if the document is predecisional at the time it is prepared, it can lose that status if

it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Whether the draft ASR properly qualified as a deliberative document was the subject of an evidentiary hearing. The evidence before the court included section 284 of the Peace Corps Manual, which outlines the required process for early termination of service of Peace Corps volunteers; the depositions of Giron and Horowitz; and the testimony of Giron, Horowitz, and Sally Olsonoski at the evidentiary hearing. The manual authorizes administrative separation for conduct ranging from minor infractions like failing to wear a motorcycle helmet, to criminal convictions, to espionage. Under these provisions, the volunteer is entitled to be informed of the specific conduct at issue, have an opportunity to respond, and be apprised of the alternative of resignation. The disciplinary options range from taking no action, to imposing conditions on further service, to administrative separation. If a volunteer resigns before a final decision to terminate him is made, the ASR is not completed. If the volunteer resigns "after the decision to administratively separate has been made but before the process is completed, the Administrative Separation Report must be completed and forwarded" to the Peace Corps's Office of Volunteer Services.

During the evidentiary hearing, Giron and Olsonoski testified that no final decision was ever made to administratively separate Horowitz. Giron testified it was "the first time [he] had encountered [so serious] an incident," and it was his first experience with an administrative separation. He sought further guidance from senior staff in Tonga and consulted on a daily basis with Peace Corps headquarters, the Office of the General Counsel, and regional senior staff. He spent "literally hours and hours on the telephone with Washington, D.C., talking to the

[G]eneral [C]ounsel." On March 16, 1999, prior to the meeting where Horowitz announced his intention to resign, Giron e-mailed the draft document to headquarters with a cover e-mail that asked the recipients to "review and send comments/changes to Sally [Olsonoski]." Giron asked that comments be sent to Olsonoski because he had to leave Tonga to attend a funeral and he anticipated that she would need to make the final decision in his absence. Giron testified that he had reached no final decision prior to the time Horowitz announced his intention to resign, and that he was unwilling to make a unilateral decision:

> [W]hatever final disposition was going to be reached on this case was going to be a consensus among all the senior officials involved, myself included, but also the [O]ffice of the [G]eneral [C]ounsel and the senior staff of the region, and we had not at that point come to any particular consensus as to which course of action we were going to follow.

According to Giron's testimony, at no time did Giron tell Horowitz that he had made a decision to administratively separate him or that he was on the verge of doing so.

Giron explained that, complying with the provisions of section 284, he never completed or officially filed the draft ASR he was crafting. He believed "the opportunity to 'think aloud' in such a draft document" was "an essential part" of the section 284 decision-making process; in his opinion, making such documents publicly available would deter Country Directors from creating them and deprive such officials of the benefit of review and comment from other departments. Horowitz argues, however, that the document lost its predecisional status by being adopted as the official agency position regarding his administrative separation; in essence, he contends that Giron had already decided to terminate his service before he resigned, even though the decision was not formally executed. After evaluating the

witnesses' testimony and credibility, the district court concluded Giron had not made a final decision about separating Horowitz. The document was prepared as an aid for Giron's decision-making process and for consultation with other Peace Corps officials. Hence, the document qualified as deliberative and predecisional.

We are not persuaded the district court's findings on these points are clearly erroneous. The draft is remarkably candid. Moreover, Giron's thought processes are woven into the document to such an extent that any attempt to segregate non-deliberative portions would effectively disclose the content and context of intra-agency deliberations. Accordingly, as the document did not lose its predecisional and deliberative status, it was properly withheld under FOIA Exemption 5.

B

In providing exemptions from the general requirement of disclosure, FOIA also provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Thus, the district court correctly concluded the student's name, which could be segregated, was not protected from disclosure by Exemption 5. That conclusion does not fully resolve the question of whether the student's name is nevertheless exempt from disclosure.

C

FOIA Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Horowitz agrees that the ASR qualifies as

a "similar file" as described in Exemption 6; thus, the remaining question is whether the release of the ASR—specifically, the portions identifying the student—would be a clearly unwarranted invasion of the student's privacy. In the district court, the Peace Corps argued Exemption 6 should apply; however, as counsel for the Peace Corps acknowledged during oral argument, the Corps's desire to be discreet and shield the privacy interests of all parties may have led the district court to underestimate the private interest and overstate the public benefit at issue. Horowitz's lack of reticence has allowed the Peace Corps to correct this defect on appeal.

To determine whether release of a file would result in a clearly unwarranted invasion of personal privacy, we must balance the private interest involved (namely, "the individual's right of privacy") against the public interest (namely, "the basic purpose of the Freedom of Information Act," which is "to open agency action to the light of public scrutiny"). *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372-73 (1976) (internal quotation marks omitted).

The focus of the public interest analysis is the citizens' right to know "'what their government is up to.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citations omitted); *see also Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (stating that the standard from *Reporters Committee* "is applicable in the case of Exemption 6"). Neither "the identity of the requesting party" nor "the particular purpose for which the document is being requested" is relevant, *Reporters Comm.*, 489 U.S. at 771-72, because "[a]s a general rule, if the information is subject to disclosure, it belongs to all." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Hence, release under FOIA is equivalent to making the information publicly available.

The availability of information through other sources lessens the public interest in its release through FOIA. *See U.S. Dep't of Def., Dep't of Military Affairs v. Fed. Labor Relations Auth.*, 964 F.2d 26, 29 (D.C. Cir. 1992). If there is no public interest in the disclosure of certain information, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n. of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). "We generally accord Government records and official conduct a presumption of legitimacy." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991). Furthermore, "clear evidence is usually required to displace" the presumption and show the presence of a public interest in investigating an agency. *Favish*, 541 U.S. at 174.

The public interest in this case is virtually nonexistent. Horowitz alleges the Peace Corps mistreated him, and that revealing the student's name will allow investigation of the agency's actions. However, he offered no credible evidence of misconduct by the Peace Corps; the district court found Giron's testimony "forthright" and Horowitz's testimony "continually evasive." Horowitz's real complaint is that he had to choose between two unpalatable alternatives. It is difficult to see how the Peace Corps's long-established procedure of allowing volunteers to resign rather than face public charges of misconduct could be deemed improper. Horowitz simply alleges that in order to prove the Peace Corps's perfidy, "it may be necessary to confirm the relation of Complainant, if any, to the Kingdom of Tonga's political, military, and/or criminal factions." Appellant's Reply Br. at 44. Horowitz offers no further details to support these extremely speculative allegations; he has not offered the "clear evidence" required to overcome the presumption that the Peace Corps's official conduct was proper.[1] In no

---

[1] Horowitz's unsupported allegation that the Peace Corps is protecting the student's name in order to cover up for its failure to

way would release of the student's name serve the civic good. Additionally, Horowitz's need to obtain the information for a pending civil suit is irrelevant, as the public interest to be weighed has nothing to do with Horowitz's personal situation.

The privacy interest implicated in a case such as this is the individual's right to "avoid[] disclosure of personal matters." *Reporters Comm.*, 489 U.S. at 762 (internal quotation marks and citation omitted).[2]  Under Exemption 6, "the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information," *id.* at 770 (internal quotation marks and citation omitted), as "there are few facts that are not at one time or another divulged to another," *id.* at 763.

Even seemingly innocuous information can be enough to trigger the protections of Exemption 6. In *United States Department of Defense v. Federal Labor Relations Authority*, the Supreme Court held Exemption 6 shielded the names and home addresses of agency employees from being released to unions that requested the lists under FOIA. 510 U.S. 487, 502 (1994). Because "[m]any people simply do not want to be disturbed at home by work-related matters," the Court was "reluctant to disparage the privacy of the home, which is accorded special

---

protect Horowitz from the student's purported blackmail attempt similarly fails to defeat the presumption of official regularity.

[2] In *Reporters Committee*, the Court examined FOIA Exemption 7(C), applicable to law enforcement files, rather than Exemption 6. Nevertheless, the Court has held that the difference between the standards for the two exemptions "is of little import" except when analyzing "the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994).

consideration in our Constitution, laws, and traditions." *Id.* at 501. Additionally, "other parties, such as commercial advertisers and solicitors, must have the same access under FOIA as the unions"; releasing the lists to the unions would have necessitated giving other parties access as well. *Id.* Thus, the Court found that the privacy interests outweighed the "negligible" public interest at stake. *Id.* at 502.

The scope of privacy protection under FOIA is not the same as in the constitutional context, *Reporters Comm.*, 489 U.S. at 762 n.13, although being "accorded special consideration in our Constitution, laws, and traditions" can give additional weight to a privacy interest. *U.S. Dep't of Def.*, 510 U.S. at 501. Hence, even if the incident between Horowitz and the student was consensual, the student might have a privacy interest in avoiding disclosure of his identity. *See generally Lawrence v. Texas*, 539 U.S. 558, 567 (2003) (stating that sexual behavior is "the most private human conduct").

Victims of sexual assaults have an arguably greater interest in the protection of their privacy. For example, the Sixth Circuit has reasoned that the occurrence of a rape "implicates both a private and a public interest, but the details of the rape primarily implicate a private interest until such time as the public interest in prosecution predominates." *Bloch v. Ribar*, 156 F.3d 673, 685-86 (6th Cir. 1998). The private interest in nondisclosure may predominate in such a case because of the personal trauma involved and the moral and social opprobrium disclosure often presages. The "interest in protecting the victims of sexual violence from humiliation, among other injuries, has prompted states to pass rape shield laws and to advocate against the publication of rape victims' names." *Id.* at 685. Similarly, Federal Rule of Evidence 412 limits the admissibility of evidence regarding the past sexual behavior or predispositions of an alleged victim of a sexual offense. "The rule aims to

safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Fed. R. Evid. 412 advisory committee's note.

In *Hunt v. FBI*, the Ninth Circuit held that the FBI should not release files from its internal investigation of an agent who had been accused of sexual misconduct; even if the agent's name was redacted from the files, she would have been identifiable based on other information in the files. 972 F.2d 286 (9th Cir. 1992). Although *Hunt* involved Exemption 7(C), under which only a reasonable expectation of an invasion of privacy must be shown to prevent releasing information, the court's reasoning is still relevant. That court found identification of the agent could have caused her "great personal and professional embarrassment," while not serving a significant public interest, as "[t]he single file sought . . . will not shed any light on whether all such FBI investigations are comprehensive or whether sexual misconduct by agents is common." *Id.* at 288-89.

While we do not confront the constitutional question that was before the Sixth Circuit in *Bloch*, the reasoning of the court aptly describes the contours of the public/private balance at stake here. We are persuaded that the student's interest in avoiding disclosure of his name is at least as strong as the privacy interest of a government agent accused of sexual misconduct, and that it is certainly as strong as the interest of federal employees in avoiding disclosure of their names and addresses. If released, the student's name would be associated not merely with an employer, or even personal sexual misconduct, but with a disputed sexual incident that he claims was not consensual. Even though the student did reveal his allegation to two Peace Corps workers, and did not receive an explicit promise of confidentiality, he still has an interest in avoiding

further dissemination of his identity. Our law uniformly recognizes that strong privacy interests are implicated when dealing with an individual's sexual activity, especially when the individual has reported a sexual assault. Unwanted public attention could lead to further trauma for the victim, who in this case did not even choose to subject himself to public scrutiny by pursuing criminal charges. His choice of virtual anonymity would be undermined by releasing his identity under FOIA, as releasing it to one person is equivalent to authorizing its release to anyone.

Accordingly, with a strong privacy interest in non-disclosure being weighed against a *de minimis* public interest in the disclosure, the invasion of privacy resulting from the release of the student's name would be "clearly unwarranted." The Peace Corps may therefore withhold the student's name under Exemption 6.

III

We turn now to the Privacy Act, which requires any "agency that maintains a system of records" to allow a requesting individual to review and make a copy of "his record or . . . any information pertaining to him which is contained in the system." 5 U.S.C. § 552a(d)(1). The agency must show the absence of a genuine issue of any material fact in order to be granted summary judgment. Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The district court held that Horowitz was not entitled to the document under the Privacy Act because the document is neither maintained, nor required to be main-

tained, in a "system of records." This ruling is unassailable. The Peace Corps's regulations dictate that an ASR should not be maintained in the agency's records if a volunteer resigns prior to an official decision to administratively separate him. In fact, the Peace Corps's manual states that an ASR should not even be completed if a volunteer resigns before such a decision is made. Since Horowitz resigned before any final decision was made, the report was never completed and—pursuant to the procedure specified by the manual—was not  maintained in the Peace Corps's official files.

Nor has Horowitz shown that Giron nevertheless placed the draft ASR in a "system of records." The Act defines "system of records" to mean "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). We have held that the words "is retrieved" "suggest strongly that a group of records should generally not be considered a system of records unless there is actual retrieval of records keyed to individuals." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1460 (D.C. Cir. 1996). In the district court, the Peace Corps presented affidavits from two of its officials stating that they had searched the Peace Corps's records and had found no ASR regarding Horowitz. Horowitz presented no evidence to counter this assertion. He alleges a copy of the draft ASR was stored in Giron's safe for some period of time, a contention the Peace Corps does not deny, and also claims the draft ASR was retrieved by his name at least one time. That "retrieval," however, occurred when Giron e-mailed the draft ASR to headquarters, and thus involved an electronic copy, not the physical document in the safe. Horowitz has not shown that files in the safe are, in practice, retrieved by individuals' names; hence, he has not "establish[ed] the existence of an element essential to his case," namely, whether the safe qualifies as a

system of records. The district court properly granted summary judgment to the Peace Corps on the ground that the document is not subject to release under the Privacy Act.[3]

Finally, we note that because the document is predecisional, it can attest to nothing. It has no official existence and continues to be held only because of pending litigation. In fact, the Peace Corps indicated at oral argument that the document will be destroyed once it is no longer needed in relation to Horowitz's various civil suits.

IV

Horowitz raises several other points on appeal. First, he claims that the district court abused its discretion in choosing to review a copy of the draft ASR in camera after conducting the evidentiary hearing. A court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions" which apply to FOIA. 5 U.S.C. § 552(a)(4)(B). The decision of whether to conduct an in camera review of a document is within the trial court's "broad discretion" and is reviewed only for abuse of discretion. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998). Horowitz claims reviewing a document containing such disturbing allegations necessarily prejudiced the district court judge against him. However, he points to no credible evidence relating to this claim or to any abuse of discretion in reviewing the document. Indeed, the district court refused the Peace Corps's request to view the document at an

---

[3] The status of the copy of the draft ASR that Giron e-mailed to headquarters is not before us. Horowitz has not argued that the Peace Corps's e-mail system qualifies as a "system of records" under the Privacy Act. Our ruling is confined solely to the copy of the ASR that was stored in Giron's safe.

earlier point in the proceeding, choosing instead to wait until after the evidentiary hearing to do so. Horowitz's claim on this point is without merit.

Additionally, Horowitz now claims the Fifth and Sixth Amendments, as well as the Administrative Procedure Act, entitle him to know the allegations contained in the draft ASR. "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984). At the same time, "[t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." *Hormel v. Helvering*, 312 U.S. 552, 557 (1941). Horowitz presents no compelling reason why he was not able to present these issues in the district court; therefore, he may not assert these claims on appeal.

Finally, Horowitz claims the district court abused its discretion in two ways: by denying his motion to present more evidence after the court's ruling was entered, and by adopting the Peace Corps's findings of fact. "[U]pon such terms as are just," Federal Rule of Civil Procedure 60(b) allows a party to be relieved from a final judgment due to, among other reasons, mistake, surprise, or misconduct of an adverse party. We review the denial of a Rule 60(b) motion for abuse of discretion unless the decision was rooted in an error of law. *Andrx Pharm. Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 805 (D.C. Cir. 2001). Horowitz points to no misconduct on the part of Peace Corps's counsel, nor does he explain why any surprise was unjust rather than a result of a mistake by his attorney. Similarly, Horowitz's examples of "clear error" in the findings adopted by the court are either immaterial or based on evidence that the court found

to be more credible than the evidence Horowitz presented. Hence, Horowitz has not shown that the district court abused its discretion in either instance.

## V

For the above reasons, we hold that the Peace Corps may withhold the student's identity from release under FOIA Exemption 6. In all other respects, we affirm the judgments of the district court.

*So ordered.*