# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 14, 2015          Decided June 5, 2015

No. 13-5269

PRISON LEGAL NEWS,
APPELLANT

v.

CHARLES E. SAMUELS, JR., DIRECTOR, FEDERAL BUREAU OF
PRISONS,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-01812)

---

*Ronald G. London* argued the cause for appellant. With him on the briefs were *Lisa B. Zycherman* and *Lance Weber*.

*Bruce D. Brown*, *Gregg P. Leslie*, *Bruce W. Sandford*, *Laurie A. Babinski*, *Peter Scheer* and *Charles D. Tobin* were on the brief for *amici curiae* The Reporters Committee for Freedom of the Press, et al. in support of appellant.

*Wyneva Johnson*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence* and *Alan Burch*, Assistant U.S. Attorneys.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: The efforts of Prison Legal News ("PLN") to obtain documents from the Federal Bureau of Prisons are chronicled in the four district court opinions preceding this appeal. *See Prison Legal News v. Samuels*, 954 F. Supp. 2d 21 (D.D.C. 2013); *Prison Legal News v. Lappin*, 780 F. Supp. 2d 29 (D.D.C. 2011); *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124 (D.D.C. 2009); *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17 (D.D.C. 2006). PLN publishes a legal journal devoted to news and litigation concerning detention facilities. In 2003, PLN filed a Freedom of Information Act ("FOIA") request with the Federal Bureau of Prisons seeking all documents showing money the Bureau paid in connection with lawsuits and claims brought against it between January 1, 1996, and July 31, 2003. PLN also sought a waiver of any fees associated with the request. *Prison Legal News v. Samuels*, 954 F. Supp. 2d at 24; *Prison Legal News v. Lappin*, 436 F. Supp. 2d at 18-19.

The Bureau produced no records and denied the fee waiver. After PLN brought suit in 2005, the Bureau produced approximately 11,000 pages of documents, of which 2,993 contained redactions. *Prison Legal News v. Samuels*, 954 F. Supp. 2d at 24-25. The Bureau provided affidavits, declarations, and *Vaughn* indices in support of the redactions.[1] *Id*. at 24-25.

_____

[1] A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987).

PLN challenged the basis for the redactions and the adequacy of the Bureau's search for responsive documents. The district court ruled that the Bureau had conducted an adequate search, but that the Bureau had not justified the redactions. *See Prison Legal News v. Lappin*, 780 F. Supp. 2d at 41-45.

After multiple cross-motions for summary judgment, 102 or so documents remained at issue. *Prison Legal News v. Samuels*, 954 F. Supp. 2d at 25 & n.5.[2] The Bureau provided an updated *Vaughn* index (the Stroble *Vaughn* index), and the parties cross-filed for summary judgment once again. The updated *Vaughn* index indicated that the Bureau applied both FOIA exemptions 6[3] and 7(C)[4] to support the remaining redactions.

The district court granted the Bureau's cross-motion for summary judgment, holding that the Stroble *Vaughn* index

---

[2] The parties state that 102 documents are still in dispute, but the district court suggested that the number is lower. *Prison Legal News v. Samuels*, 954 F. Supp. 2d at 25 n.5. In the parties' Joint Appendix, some of the "redacted documents in dispute" do not contain any redactions. *See, e.g.*, Exhibits 93 & 94 (Docs. 110-97 & 110-98), Joint Appendix 1209-36.

[3] Exemption 6 permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).

[4] Exemption 7(C) permits the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *see Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986).

supported application of FOIA exemption 6. In reaching that conclusion, the court first noted that the requested documents include names and personal information and so "easily fall under the purview of an individual's 'interest in avoiding disclosure of personal matters.'" *Id.* at 29 (quoting *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004)). The court proceeded to balance this interest against the public interest in disclosure, finding that the Bureau's categorical explanation for the redactions supported application of exemption 6. *Id.* at 29-31; *see also Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005); *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982). Because it determined that exemption 6 supported the redactions, the court did not address the applicability of exemption 7(C).

On appeal, PLN argues that neither exemption 6 nor exemption 7(C) applies. The argument is that the Bureau's use of a categorical explanation for the redactions was improper because of the varied nature of the documents and of the individuals shielded from disclosure. PLN claims that the district court did not adequately balance the privacy and public interests at stake. Because we agree that more was required, both of the Bureau and of the district court, we reverse the district court's grant of summary judgment and remand for further proceedings in accordance with this opinion.

**I.**

FOIA requires the government to disclose, upon request, broad classes of documents identified in 5 U.S.C. § 552(a). It exempts from disclosure nine categories of documents described in 5 U.S.C. § 552(b). The government is entitled to summary judgment if no material facts are in dispute and if it demonstrates that withheld or redacted documents are not

required to be disclosed under § 552(a) or are exempt from disclosure under § 552(b). *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 583-84 (D.C. Cir. 2000); *see also Cause of Action v. Nat'l Archives & Records Admin.*, 753 F.3d 210, 212 (D.C. Cir. 2014); *Katz v. Nat'l Archives & Records Admin.*, 68 F.3d 1438, 1440 (D.C. Cir. 1995). We review the district court's grant of summary judgment *de novo*. *See Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014).

**A.**

The Bureau redacted documents on the basis of exemption 6, which shields from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[5] "Similar files" include "detailed Government records on an individual which can be identified as applying to that individual." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d at 1124 (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). Exemption 6 covers "not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Judicial Watch, Inc. v. Food & Drug Admin.*, 449

---

[5] As we have written, the *Vaughn* index indicates that the Bureau applied not only exemption 6, but also exemption 7(C), an exemption that protects information that was collected for law enforcement purposes and "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), to support the redactions. "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 496 n.6 (1994)). Because the district court addressed only exemption 6, our analysis is limited to that exemption. On remand, the district court may examine the applicability of both exemptions.

F.3d 141, 152 (D.C. Cir. 2006) (alteration in original) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)).

The primary purpose of this exemption is "'to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d at 1124 (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. at 599). Exemption 6 "does not categorically exempt individuals' identities." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d at 153. "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996).

To apply exemption 6, a court must first "determine whether 'disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Homer*, 879 F.2d 873, 874 (D.C. Cir. 1989)). If a substantial privacy interest is at stake, then the court must "balance" the individual's right of privacy against the public interest in disclosure. *Horowitz*, 428 F.3d at 278 (citing *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372-73 (1976)).

"The focus of the public interest analysis is the citizens' right to know 'what their government is up to.'" *Id.* (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Neither the identity of the requesting party nor the purpose for which the party intends to use a document is relevant to the public interest, but the availability of the information through other sources is. *Id.*

The government bears the burden of showing that a substantial invasion of privacy will occur if the documents are released.  *See Ripskis v. U.S. Dep't of Hous. & Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984).  It may do so by affidavits "'if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed. of Am. v. Dep't of Agric.*, 455 U.S. 283, 287 (D.C. Cir. 2006)).

**B.**

PLN does not contend that the documents still at issue are outside the scope of exemption 6, but argues that the district court erred in balancing the individual's privacy interest against the public interest in disclosure.[6]  The redacted information consists of individuals' names and other personal identifying information that would reveal the identity of a person related to a claim filed against the Bureau.  *Prison Legal News v. Samuels*, 954 F. Supp. 2d at 28.  Government employees have "at least a minimal privacy interest in [their] employment history and job performance evaluation."  *Stern v. FBI*, 737 F.2d 84, 91 (D.C.

---

[6] Amicus curiae contends that the information at issue here "is not the type that should be exempt under Exemption 6."  Brief of Amicus Curiae The Reporters Committee for Freedom of the Press, et al. at 7.  The court will not entertain an argument made for the first time on appeal by an amicus. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 850 (D.C. Cir. 2010); *see also Cook v. Food & Drug Admin.*, 733 F.3d 1, 5-6 (D.C. Cir. 2013).  And, even if we were to consider this argument, the redactions at issue here – covering individuals' names and other personal identifying information – fall within the scope of exemption 6, which extends to "bits of personal information, such as names and addresses." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d at 152 (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d at 391).

Cir. 1984). We have extended this protection to non-government employees whose names appear in government records. *See, e.g.*, *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urban Dev.*, 936 F.2d 1300, 1303 (D.C. Cir. 1991).

To carry its burden, the Bureau's *Vaughn* index must "'adequately describe each . . . [redaction] from a released document,' and 'must state the exemption claimed for each . . . [redaction] and explain why the exemption is relevant.'" *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (quoting *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979) (per curiam)). The Bureau submitted a declaration of Wilson J. Moorer, a paralegal specialist at the FOIA section of the Bureau's general counsel's office, which separates the documents at issue into categories and specifies the exemptions applied to each category. *See* Fourth Supplemental Decl. of Wilson J. Moorer, Joint Appendix 1478 ("Moorer Declaration"). This declaration supplements the latest *Vaughn* index the Bureau produced on April 25, 2012. Joint Appendix 1349. The Moorer Declaration describes each type of document and the information redacted. It then provides a general rationale for protecting personal identifying information: to prevent the public from knowing an individual suffered some sort of injury or loss, or was subjected to discrimination, because association with the filing of a claim can be stigmatizing. It then states that the public interest in knowing the identity of individuals involved in claims against the Bureau is minimal.

The primary types of claims against the Bureau are those inmates filed under the Federal Tort Claims Act ("FTCA") and those employees filed with the Equal Employment Opportunity Commission or Merit Systems Protection Board. *Prison Legal News v. Samuels*, 954 F. Supp. 2d at 28. Documents related to

the tort claims include Tort Claim Form SF-95 which is "utilized to submit [ ] administrative claims" for "money damages for personal injury or death and/or damage to or loss of property" pursuant to the FTCA. Moorer Decl. ¶ 10. For discrimination claims Department of Justice Complaint of Discrimination Form DOJ 201A is "used where an applicant for Federal Employment or a Federal Employee believes he or she has been discriminated against because of race, color, sex . . ., religion, national origin, age, disability . . ., sexual orientation, parental status or reprisal by a federal agency" and has presented the matter to the EEOC. Moorer Decl. ¶ 80.

For each type of document, the Moorer Declaration asserts a privacy interest because the filing of a claim discloses that the individual who filed the claim either "suffered some sort of injury, loss or death" or "has alleged that he or she suffered some form of discrimination by the Bureau of Prisons." Moorer Decl. ¶¶ 11, 79, 102; Joint Appendix 1483, 1524, 1547. This privacy interest is bolstered by "the fact that it is not unusual or uncommon for an individual to be stigmatized by the filing of claims, regardless of whether the stigma has merit." *Id.* ¶ 11, Joint Appendix 1483. As to the public interest in FTCA claimants' identities, the Declaration asserts that "[t]he knowledge a particular person filed a claim disclosed no information that would directly reveal the operations or activities of the federal government," and would "reveal only allegations related to singular incidents, as opposed to legitimate findings related to agency practice." *Id.* Accordingly, the "release of the names would make no contribution to the public understanding of a government function." *Id.* As to EEOC complaints, the Declaration states "the disclosure of the specific claimant that filed an EEOC complaint falls outside the ambit of the public interest that the FOIA was enacted to serve" and so the "release of the names would make no contribution to the

public understanding of a government function." Moorer Decl. ¶ 79.

The Bureau's final *Vaughn* index was more detailed in some respects than the Moorer Declaration and less so in others. The index provided a specific description of each document – typically the type of document, the date of the document, the number of pages, and its docket or exhibit number. The "rationale for exemptions" included summary assertions like "revealing the name of the Claimant who filed an EEOC complaint and his or her address would constitute a clearly unwarranted invasion of personal privacy," and the "release of the Complaint's name and his or her address would make no contribution to the public understanding of a government function." Stroble *Vaughn* Index at 1. For some documents, the rationale for exemptions included the fact that the "claim involved an allegation of sexual abuse," *e.g.* Stroble *Vaughn* Index at 6-7, that the claimant "filed a claim of discrimination," *e.g. id.* at 25, or that the claim was filed pursuant to the FTCA, *e.g. id.* at 109. The redactions were not limited to those filing tort or discrimination claims, but in some instances also encompassed the alleged wrongdoers or witnesses on the basis that "revealing the name of staff members merely alleged to have engaged in discriminatory conduct or alleged to have witnessed such, regardless if such charges were sustained, would constitute a clearly unwarranted invasion of personal privacy." Stroble *Vaughn* Index at 5, 7-10.

Both the final *Vaughn* index and the Moorer Declaration lump the privacy interests of all claimants and any perpetrator or witness whose information is redacted into categories based on the type of document in which the individual's information appears. Both provide only cursory statements such as those described above to justify the redactions. The district court

accepted this categorical methodology. *Prison Legal News v. Samuels*, 954 F. Supp. 2d at 28-29.

## II.

A categorical approach to redactions or withholdings is permissible under FOIA when "the FOIA litigation process threatens to reveal 'the very information the agency hopes to protect.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) ("*CREW*") (quoting *ACLU v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013)). The government may justify its withholdings and redactions "category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied." *Id.* (quoting *Gallant v. NLRB*, 25 F.3d 168, 173 (D.C. Cir. 1994)). The range of circumstances included in the category must "characteristically support[] an inference that the statutory requirements for exemption are satisfied." *Id.* at 1088-89 (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)).

Here, it is difficult to see how the categories in the Moorer Declaration support application of exemption 6. The categories, centered as they are on specific types of filed documents, include a wide range of claims covering various degrees of privacy interests. As PLN points out, the privacy interest of tort claimants will be different when they are claiming injury from a slip and fall as compared to a sexual assault. The EEOC claims also present a diverse picture and can hardly be considered a category that "'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied." *CREW*, 746 F.3d at 1088-89 (alteration in original) (quoting *Nation Magazine*, 71 F.3d at 893).

There is another problem with the categorical approach here – it fails to distinguish between redacting the identity of the alleged victim and the identity of the alleged perpetrator. This distinction is significant with respect to the employees' interest in keeping their information private. But the Bureau has made no effort to distinguish between the privacy interests of employees who are victims and those who are perpetrators. In fact, it has offered little support for redacting information that would identify perpetrators. The district court failed to give any weight to the distinction between the accused and the accuser when balancing private and public interests.

In addition, the Bureau has not been consistent in shielding the names of its employees accused of wrongdoing. While redacting the names of those accused of discriminating in Exhibits 1 (Doc. 110-5) and 2 (Doc. 110-6), it did not redact the name of a Bureau employee who was the alleged perpetrator of a sexual assault on an inmate in Exhibit 3 (Doc. 110-7). Joint Appendix 274, 291, 302. The Bureau never explains its inconsistency. Neither the Stroble *Vaughn* index nor the Moorer Declaration provides insight into why the names of some alleged perpetrators are redacted while others are revealed.

The category of claims and settlements under the FTCA is equally diverse, if not more so, than the claims of employment discrimination. Consider, for example, a Bureau employee's tort claim for personal injury resulting from being hit in the eye by a screw thrown by another Bureau employee, Exhibit 53 (Doc. 110-57), Joint Appendix 869-76; an inmate's claim that he was kept in prison 154 days after his release date, Exhibit 102 (Doc. 110-106), Joint Appendix 1307-12; and the above mentioned sexual assault of an inmate, Exhibit 3 (Doc. 110-7), Joint Appendix 302-14. In each case, the claimant's name was redacted, but in the eye injury case, the name of the perpetrator and an inmate witness were also redacted. Exhibit 53 (Doc.

110-57).  Yet in the case of the sexual assault, the perpetrator's name was not redacted.  In the scheme of things, one would think that an employee's eye injury resulting from the throwing of a screw is vastly different from a sexual assault on an inmate and that the privacy interests of the victims and perpetrators in these two cases will be different.  These examples are sufficient to show that the privacy interests involved in a given type of claim do not fall within a single category that "characteristically support[s] an inference that the statutory requirements for exemption are satisfied."  *CREW*, 746 F.3d at 1088-89 (alteration in original) (quoting *Nation Magazine*, 71 F.3d at 893).[7]

The same can be said about the public interest in disclosure.  PLN seeks documents regarding "specific events that occurred within [Bureau] facilities that will provide insight to the public about how its federal prisons are being managed and operated, and how its tax dollars are being expended." *Prison Legal News v. Lappin*, 436 F. Supp. 2d at 26.  Identifying employees who repeatedly engage in tortious or discriminatory conduct will "'shed[] light on an agency's performance of its statutory duties.'"  *Consumers' Checkbook Ctr. for the Study of Servs.*, 554 F.3d at 1051 (alteration in original) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749,

---

[7] While the Bureau's redactions are far from uniform between documents, they are also inconsistent within a single Exhibit.  When a victim's name appears both in a settlement document and in a public court filing, the Bureau redacts the name from the former but not the latter.  *See, e.g.*, Exhibit 54 (Doc. 110-58), Joint Appendix 878-87 (redacting name of deceased inmate in stipulation for settlement and administrative claim but not in order for temporary guardianship for the decedent's child); Exhibit 95 (Doc. 110-99), Joint Appendix 1239-45 (redacting name of claimant in FTCA claim form but not in a settlement of civil action).

773 (1989)). This, in turn, will further the public interest in ensuring that "disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner." *Stern v. FBI*, 737 F.2d at 92. It may also help root out the misuse of public funds, an interest typically favoring disclosure. *See, e.g.*, *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1232-33 (D.C. Cir. 2008); *Dobronski v. FCC*, 17 F.3d 275, 278-80 (9th Cir. 1994).

The public interest in disclosure will vary based on the individual's role in a given claim – victim, perpetrator, witness, medical professional diagnosing an inmate, and so forth – and the nature of the claim itself. These differences in interest do not warrant the categorical approach taken in the Moorer Declaration and Stroble *Vaughn* Index. The specific form used to lodge a claim reveals little about the public interest at stake, and so use of the claim form categorically to justify redactions does not reflect the balancing of interests that FOIA requires. The Bureau's declarations and *Vaughn* indices fall short of "'adequately describ[ing] each . . . [redaction] from a released document' and . . . 'explain[ing] why the exemption is relevant.'" *Summers v. Dep't of Justice*, 140 F.3d at 1080 (quoting *Founding Church of Scientology*, 603 F.2d at 949).

We decline to engage in the required balancing in the first instance and therefore will remand the case to the district court. On remand, the Bureau must fashion a coherent catalogue of the documents still in dispute and the district court must balance the privacy and public interests in light of the Bureau's new submissions.

We are not foreclosing use of a categorical approach. There may be groups in which a categorical approach is appropriate. For instance, perhaps the Bureau can formulate a single rationale for shielding the names of medical professionals who treat

inmates, or for redacting the names of prisoners who testify in FTCA claims because they fear retaliation by Bureau employees or other inmates. An agency may even be justified in shielding from disclosure the names of all employees without providing a justification on an individual-by-individual basis. *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d at 153 (citing *Gallant*, 26 F.3d at 173). But the redactions in this case vary greatly, and the categories are not drawn based on the individual's privacy interest or the public interest in disclosure.

The district court's grant of summary judgment to the Bureau is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*